UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| JERRY L. HARRIS, | ) | |
| | ) | |
| Petitioner, | ) | CASE NO.  C05-885-JLR-MJB |
| | ) | |
| v. | ) | REPORT AND |
| | ) | RECOMMENDATION |
| SANDRA CARTER, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

## I.  INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Jerry L. Harris is a state prisoner currently incarcerated at the Clallam Bay Corrections Center in Clallam Bay, Washington.  He seeks relief under 28 U.S.C. § 2254 from the judgment and sentence resulting from his October 1996 conviction in Whatcom County Superior Court for aggravated first degree murder.  In lieu of filing an answer, respondent filed a motion to dismiss on grounds that petitioner's federal habeas petition is time-barred under 28 U.S.C. § 2244(d)(1)(D). Dkt. #9.  Petitioner filed a response in opposition to the motion (Dkt. # 12), and respondent filed a reply (Dkt. #13).  After careful consideration of the entire record, I conclude that respondent's motion to dismiss should be GRANTED.

REPORT AND RECOMMENDATION
Page - 1

## II.  FACTUAL AND PROCEDURAL HISTORY

The Washington Court of Appeals summarized the facts of related to petitioner's conviction as follows:

> On October 21, 1995, Rene Vivas was shot and killed outside Murdock's Restaurant and Lounge in Ferndale, Washington. Todd Mihalcea, Murdock's bouncer, broke up a fight that night involving defendant Brett Johnston.  Later that evening, he stopped another fight in Murdock's parking lot where several people were beating Johnston.  Mihalcea took Johnston back to his associates, defendants Jerry Harris and Michael Sawyer.  The three men persuaded Mihalcea not to call the police.  When Mihalcea discovered the credit card the defendants presented was expired, they agreed to go to a cash machine to pay their tab.  Mihalcea recorded the license plate number of Johnston's El Camino.

> Kim Smith was a patron at Murdock's that evening and sat with Vivas and a group of other people, including defendant Harris.  Smith noticed that Vivas had a large amount of money and wore an apparently-valuable necklace.  She also noticed that Harris was watching Vivas and whenever Harris noticed Smith looking at him, he looked away.  Smith had "one of those funny feelings" about Harris and asked her companions if they knew who he was.  No one did.

> At closing time, Harris left Murdock's and walked around the corner out of Mihalcea's view.  Soon afterwards, Vivas left Murdock's and followed Harris's route.  Mihalcea heard a gunshot a short time later.  Robbie Berg, a member of the band that had been playing at Murdock's, also heard the gunshot.  He went around the corner and saw two men standing over Vivas' prone body.  One of the men pointed a gun at Berg and told him to leave.  Berg ran and called 911.  Mihalcea ran around the corner, saw Vivas lying on the ground and heard people running away.

> Two Ferndale Police Officers were parked across the street from Murdock's at the time of the shooting.  They heard the shot, and shortly afterwards were dispatched to Murdock's.  After speaking with Mihalcea, they broadcast the El Camino's license plate number.  Washington State Patrol Trooper Dan W. Turner heard the broadcast.  He was following Johnston's El Camino because he suspected Johnston was driving under the influence of alcohol.  Trooper Turner stopped the El Camino and saw defendants Harris and Sawyer in the passenger seats.  Backup officers arrived a short time later and confirmed that Mihalcea's descriptions of the three men at Murdock's matched the men in the El Camino.

> After a few hours, the defendants were taken for a gunshot residue test.  No residue was found on any of their hands, but some of the officers saw "blood on the lower part of Mr. Harris' right leg."  Harris also had

REPORT AND RECOMMENDATION
Page - 2

blood on his socks, shirt, and coat.  Between 6 a.m. and 7 a.m., officers seized all three defendants' clothing without a warrant.  The clothing had been inventoried and was in the custody of the jail.  At noon the same day, police served search warrants for hairs and fibers on the three defendants. Analysis at a forensic laboratory established that DNA from blood found on Harris's pants matched Vivas' DNA profile.

Later that afternoon, Detective Bob Watson and Russell Robinson interviewed Sawyer in the Whatcom County Jail after Sawyer waived his <u>Miranda</u> rights.  Based on the information Sawyer gave them, the detectives found Vivas' necklace and wallet in the dashboard of the El Camino,[1] a gun Harris threw out of the window, and a second spent shell casing.  Forensic analysis of the gun established that it ejected the spent shell casings found near Vivas' body and in the El Camino.

The defendants were charged with aggravated first degree murder and first degree felony murder.  Harris moved pretrial and during trial to sever his case from the codefendants.  He also moved to admit certain "confessions" Sawyer made during his months in custody before trial that allegedly exonerated Harris.  After a hearing, the trial court denied all the motions.

Harris tried to offer details of a robbery at the Evergreen Motel in Bellingham four days before Vivas was murdered.  During the robbery, Sawyer threatened Steve Whitten with a gun, then pistol-whipped him. The gun discharged and grazed Whitten's head.  Harris held Whitten's wife to keep her from helping Whitten.  Harris also kicked Whitten and yelled at him to give Sawyer the money they wanted.  Sawyer and Harris were convicted of the robbery in July 1996.  The trial court denied the motion to admit details of the Evergreen robbery as irrelevant and prejudicial.

During trial, Sawyer's counsel asked Detective Watson if he knew that Sawyer was not a "gun person."  Harris again moved to present evidence of the Evergreen robbery to rebut the interference that Sawyer did not handle guns.  The trial court denied the motion, struck the question and answer, and instructed the jury to disregard them.

Harris was convicted of aggravated first degree murder.  The parties later realized that many of the jury instructions used by the jury during their deliberations included citations to authority.

Dkt. #9 at Ex. 7 Unpublished Opinion, *State v. Sawyer*, 1999 WL 619071 (Wash. App.

---

[1]Detective Watson had searched the El Camino earlier and, although he found Mr. Vivas' necklace in the car, he could not find the wallet, which was stuffed into the front console.

REPORT AND RECOMMENDATION
Page - 3

1   Div. 1).[2]  On November 1, 1996, petitioner was sentenced to life imprisonment without

2   parole or early release.  *Id.* at Ex. 1, Judgment and Sentence.

3      Petitioner timely appealed his conviction to the Washington Court of Appeals,

4   Div. I ("court of appeals"), raising a number of issues.  *Id.* at Ex. 3.  The court of appeals

5   affirmed his conviction in an unpublished opinion issued on August 16, 1999.  *Id.* at Ex.

6   7.  Petitioner sought discretionary review in the Washington State Supreme Court ("state

7   supreme court"), which denied the petition for review without comment on February 29,

8   2000.  *Id.* at Ex. 9.

9      On February 20, 2001, Petitioner filed a Personal Restraint Petition ("PRP") in

10  the court of appeals.  *Id.* at Ex. 10.  On August 25, 2003, the court of appeals issued an

11  unpublished opinion affirming petitioner's conviction.  *Id.* at Ex. #18.  Petitioner's

12  motion for discretionary review in the state supreme court was denied by the Court

13  Commissioner.  *Id.* at Ex. 21.  On February 4, 2004, the state supreme court denied

14  petitioner's motion to modify the commissioner's ruling.  *Id.* at Ex. 23.  Petitioner then

15  filed a motion for hearing of the motion to modify by the full court *en banc*, or

16  alternatively, for reconsideration of denial of the motion to modify.  *Id.* at Ex. 24.

17  However, the court clerk placed the pleading in the closed file pursuant to RAP 17.2(a)

18  and RAP 12.4(a).  *Id.* at Ex. 25.[3]

19

---

20      [2]When citing exhibits, this court uses the exhibit numbers that respondent assigned to the

21  attachments to her motion to dismiss, not the exhibit numbers reflected on the court's docket for
   this case.

22      [3]Exhibit 25 is a letter from petitioner's counsel to the Supreme Court Deputy Clerk

23  concerning the court's decision to place petitioner's motion to modify in the closed file.  A
   handwritten note on the face of the letter, which appears to be initialed by the supreme court

24  clerk, states that "at the direction of the Chief Justice, this letter has been placed in the closed file
   without further action."

25

26  REPORT AND RECOMMENDATION
   Page - 4

In March 4, 2004, petitioner filed a second personal restraint petition in the state supreme court, arguing that the validity of his conviction and sentence was affected by recent appellate decisions. *Id.* at Ex. 26.   Petitioner subsequently filed an amended PRP on March 23, 2004.   On July 27, 2004, the state supreme court commissioner issued a ruling dismissing the PRP because it was not based solely on grounds for relief exempt from the one year time limit for collateral attack. *Id.* at Ex. 30.   On October 5, 2004, the state supreme court denied petitioner's motion to modify the commissioner's ruling. *Id.* at Ex. 32.   The court issued a Certificate of Finality on July 27, 2004. *Id.* at Ex. 33.

Petitioner filed a third PRP in the state supreme court on October 11, 2004. *Id.* at Ex. 34.   On March 14, 2005, the commissioner of the state supreme court issued a ruling dismissing the PRP on the basis that is was procedurally barred. *Id.* at Ex. 36. Petitioner's motion to modify the commissioner's ruling was denied by the court, without comment. *Id.* at Ex. 38.   On June 8, 2005, the state supreme court issued a Certificate of Finality certifying that the commissioner's ruling on March 14, 2005 was final. *Id.* at Ex. 39.

Petitioner filed the present petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on May 11, 2005.

## III.  GROUNDS FOR REVIEW

Petitioner raises the following six grounds in his federal habeas petition:

1.      Whether admission of those portions of the out-of-court declaration of nontestifying codefendant Sawyer which minimized his own involvement and inculpated Mr. Harris violated the Confrontation Clause of the U.S. Constitutions [sic], especially in light of <u>Crawford</u>, <u>Lilly</u>, <u>Bruton</u>, <u>Richardson</u>, and <u>Gray</u>.

2.      Whether improper redaction of the codefendant's statement to allow admission of material inculpatory of Mr. Harris but to exclude material that was exculpatory violated the constitutional rights to due process and a fair trial, and to present a complete defense.

REPORT AND RECOMMENDATION
Page - 5

3.      Whether the trial court erred in instructing the jury that it could attribute aggravating factors to Mr. Harris, even if they were committed by one of the codefendants, in violation of the plain language of the accomplice liability statute and the aggravated murder statute, thus violating the constitutional guaranties of due process, a fair trial, and to be free of cruel and/or unusual punishment.

4.      Whether the codefendant's lawyer's closing argument comment on Mr. Harris' right to remain silent violates the Constitutional guaranty of due process, a fair trial, and the right to remain silent.

5.      Whether the trial court erred in failing to give the jury an explanatory or cautionary instruction when it dismissed the aggravated murder first degree charge against codefendant Mr. Johnston, but did not dismiss the aggravated murder charge against Mr. Harris; whether such error violates the constitutional guaranty of due process and a fair trial; and whether trial counsel was ineffective in failing to request such an instruction.

6.      Whether the number and severity of the errors in this case, considered in combination, amounts to cumulative error in violation of the due process and fair trial guaranties of the U.S. Constitution.

IV.  DISCUSSION

Respondent argues that petitioner's federal habeas petition is time-barred based on 28 U.S.C. § 2244(d) and *Pace v. DiGuglielmo*, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005).  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year statute of limitations on habeas corpus petitions filed by state prisoners in federal court.  28 U.S.C. § 2244(d)(1).  It specifically provides that "he limitation period shall run from the latest of -- (A) the date on which the judgment became final by the conclusion of direct review or the expiration of time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).

Thus, under the statute, a judgment becomes "final" in one of two ways -- either by the conclusion of direct review by the highest court, including the United States Supreme Court, to review the judgment, or by expiration of the time to seek such review, again from the highest court from which such direct review can be sought.  *Wixom v. Washington*, 264 F.3d 894, 897 (9th Cir. 2001); *cf. Bowen v. Roe*, 188 F.3d 1157, 1158-

59 (9th Cir. 1999) ("We hold that the period of direct review includes the period within which a petitioner can file a petition for writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition.").

On direct review, the state supreme court denied petitioner's petition for discretionary review on February 29, 2000. Dkt. # 9 at Ex. 9. Petitioner then had 90 days after entry of the order to file a petition for writ of certiorari in the United States Supreme Court. Sup. Ct. R. 13(1). Accordingly, because petitioner could have sought a writ of certiorari during that period, his state court judgment became final and the limitations period began to run on May 29, 2000, the date on which time to seek such review expired. Thus, counting forward one year, Petitioner had until May 29, 2001, to file his federal habeas petition, unless the statute of limitations was statutorily or equitably tolled.

Here, Petitioner's federal habeas petition was filed on May 11, 2005, almost four years outside the limitations period. Accordingly, his federal habeas petition is timely only if his state court PRPs tolled AEDPA's statute of limitations for all but 365 days or less between the date on which the limitations period began to run and the filing of his federal habeas petition.

A.   Statutory Tolling

The AEDPA provides that the one-year statute of limitations is tolled for "[t]he time during which a *properly filed* application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2) (emphasis added). An application is "properly filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings, including the time limits upon its delivery. *See Artuz v. Bennett*, 531 U.S. 4, 8, 121 S.Ct.

REPORT AND RECOMMENDATION
Page - 7

361, 148 L.Ed.2d 213 (2000).  When a postconviction petition is untimely under state law, "that [is] the end of the matter" for purposes of § 2244(d)(2).  *Pace v. DeGuglielmo*, 125 S.Ct. at 1812.

In this case, it is undisputed that Petitioner's first PRP tolled the statute of limitations because it was filed on February 20, 2001, slightly more than three months before his one-year limitations period for filing a federal habeas petition expired.  *See* Dkt. # 9 at Ex. 10.  The limitations period remained tolled until February 4, 2004, the date the state supreme court denied petitioner's motion to modify the court commissioner's ruling denying petitioner's motion for discretionary review.  *See* Dkt. # 9 at Ex. 23.  Likewise, petitioner does not challenge respondent's argument that under *Pace*, neither of petitioner's last two PRPs were "properly filed" because the state supreme court commissioner ruled that they were untimely.  Thus, under *Pace v. DiGuglielmo,* neither of the last two PRPs operated to further toll the one-year limitations period under § 2244(d)(2).  Petitioner contends, however, that he is entitled to equitable tolling.

B.   Equitable Tolling

"[T]he threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule."  *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003) (citation omitted).  The Ninth Circuit has made it clear that "[e]quitable tolling will not be available in most cases, as extensions of time will only be granted if 'extraordinary circumstances' beyond a prisoner's control makes it impossible to file a petition on time."  *Calderon v. United States Dist. Ct. (Kelly)*, 163 F.3d 530, 541 (9th Cir. 1998) (en banc) (citing *Alvarez-Machain v. United States*, 107 F.3d 696, 701 (9th Cir. 1997)); *Calderon v. United States Dist. Ct. (Beeler)*, 128 F.3d 1283, 1288-89 (9th

REPORT AND RECOMMENDATION
Page - 8

Cir. 1997).   When external forces, rather than a lack of diligence, account for the failure

to file a timely claim, equitable tolling of the statute of limitations may be appropriate.

*See Miles v.* Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999); Calderon *(Kelly)*, 163 F.3d at

541; *Calderon (Beeler)*, 128 F.3d at 1288-89.   The petitioner bears the burden of proving

that he is entitled to equitable tolling.   *See Smith v. Duncan*, 297 F.3d 809, 814 (95 Cir.

2002); *see also Hinton v. Pac. Enters.*, 5 F.3d 391, 395 (9th Cir. 1993).

Here, Petitioner asserts that he "sought state appellate and post-conviction relief

early and continuously, without letting any periods of time elapse while sleeping on his

rights."  Dkt. #12 at 4.   He argues that he is entitled to equitable tolling because he

justifiably relied on the pre-*Pace* controlling precedent in the Ninth Circuit, *Dictado v.*

*DuCharme*, 244 F.3d 724 (9th Cir. 2001), where the court ruled that state post-

conviction petitions which the state courts determine to be "untimely" may nevertheless

be considered "properly filed" under § 2244(d)(2).   *Id.* at 2, 6.   Respondent opposes

application of equitable tolling in this case on the grounds that such circumstances fail to

meet the high burden for equitable tolling established by the Ninth Circuit.   Respondent

notes that with the U.S. Supreme Court's holding in *Pace,* the precedent set out in

*Dictado* no longer applies.   Respondent argues that  "the responsibility for the untimely

filing of petitioner's federal habeas petition lies with his decision to file three personal

restraint petitions in the Washington state courts (with the last two of those petitions

being found time-barred) rather than filing a federal habeas petition."  Dkt. #13 at 2.

This court agrees that Petitioner has not met his burden of proving entitlement to

equitable tolling.   Petitioner has simply not identified any extraordinary circumstances

"beyond his control" that made it *impossible* for him to file a timely federal habeas

petition.   The fact that *Dictado* was controlling Ninth Circuit law *pre-Pace,* in no way

REPORT AND RECOMMENDATION
Page - 9

precluded or made it "impossible" for petitioner to seek federal habeas relief.  Petitioner was free to file his federal habeas petition at any time after his state court judgment became final, and the decision to delay pursuing federal remedies was not beyond petitioner's or his counsel's control.  In fact, a prisoner seeking state postconviction relief might avoid the predicament of finding out at the end of years of state court litigation in a good faith effort to exhaust state remedies that he was never "properly filed," by filing a "protective petition" in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted.  *See Pace v. DiGuglielmo*, 125 S.Ct. at 1813 (citing *Rhines v. Weber, -- U.S.  --, 125* S.Ct. 1528, 1531, 161 L.Ed.2d 440 (2005)). Here, instead of an external force, it was petitioner's and his counsel's tactical choice to continue to pursue filing several PRPs in the state courts, rather than filing a federal habeas petition within AEDPA's one-year window.   Therefore, I conclude that petitioner is not entitled to equitable tolling.

## V.  CONCLUSION

For the reasons set forth above, I recommend that Respondent's motion to dismiss (Dkt. #9) be GRANTED, thereby denying Petitioner's § 2254 habeas petition (Dkt. #1) and dismissing this action with prejudice.  A proposed order accompanies this Report and Recommendation.

DATED this 31st day of January, 2006.

_____
MONICA J. BENTON
United States Magistrate Judge

REPORT AND RECOMMENDATION
Page - 10